IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

NICKALIST LANG,
     Petitioner,

vs.                                     Case No. 5:09cv229/RS/EMT

KENNETH S. TUCKER,[1]
     Respondent.
_____/

## ORDER and REPORT AND RECOMMENDATION

     This cause is before the court on Petitioner's petition for writ of habeas corpus filed under 28 U.S.C. § 2254 (doc. 1).  Respondent filed an answer and relevant portions of the state court record (doc. 12).  Petitioner filed a reply (doc. 15).

     The matter is referred to the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636 and N.D. Fla. Loc. R. 72.2(b).  After careful consideration of all issues raised by Petitioner, it is the opinion of the undersigned that no evidentiary hearing is required for the disposition of this matter, Rules Governing Section 2254 Cases 8(a).  It is further the opinion of the undersigned that the pleadings and attachments before the court show that Petitioner is not entitled to relief.

I.      BACKGROUND AND PROCEDURAL HISTORY

     The relevant aspects of the procedural background of this case are undisputed by the parties and established by the state court record (*see* doc. 12).[2]  Petitioner was charged in the Circuit Court in and for Jackson County, Florida, Case No. 04-0565CF, with one count of possession of marijuana

---

[1] Kenneth S. Tucker succeeded Edwin G. Buss, who succeeded Walter A. McNeil, as Secretary for the Department of Corrections.  Secretary Tucker is automatically substituted as Respondent.  *See* Fed. R. Civ. P. 25(d)(1).

[2] Hereinafter all citations to the state court record refer to the exhibits submitted with Respondent's answer (doc. 12).  If a cited page has more than one page number, the court cites to the "Bates stamp" page number.

with intent to sell or deliver (Count I), one count of possession of cocaine with intent to sell or deliver (Count II), one count of possession of a firearm by a convicted felon (Count III), and one count of possession of drug paraphernalia (Count IV) (Ex. A at 1).  Count III was severed for trial (*see* Ex. B at 4, 7).  Following a jury trial on May 26, 2005, Petitioner was found guilty as charged on Count III (Ex. A at 35, Ex. B).  He was sentenced on July 21, 2005, to ten (10) years of imprisonment, with a three-year mandatory minimum, followed by a period of five (5) years of probation, with presentence credit of sixty (60) days (Ex. A at 56–67, 71–75).[3]

Petitioner, through counsel, appealed the judgment to the Florida First District Court of Appeal ("First DCA"), Case No. 1D05-3697 (Ex. F).  On November 8, 2006, the First DCA affirmed the conviction and "overall sentence," but reversed the three-year mandatory minimum and remanded with directions to strike that portion of the sentence (Ex. H).  Lang v. State, 941 So. 2d 528 (Fla. 1st DCA 2006).  An amended judgment and sentence was rendered December 6, 2006 (Ex. K at 364–66).

On March 4, 2007, Petitioner filed a pro se motion for post-conviction relief, pursuant to Rule 3.850 of the Florida Rules of Criminal Procedure (Ex. J at 1–8).  He subsequently filed an amended motion (*id.* at 19–27).  Following an evidentiary hearing, at which Petitioner was represented by counsel, the state circuit court denied the motion (*id.* at 129–35).  Petitioner appealed the decision to the First DCA, Case No. 1D08-2633 (Ex. L).  The First DCA affirmed the decision per curiam without written opinion on March 23, 2009, with the mandate issuing April 20, 2009 (Exs. N, O).  Lang v. State, 6 So. 3d 58 (Fla. 1st DCA 2009) (Table).

Petitioner filed the instant federal habeas action on July 1, 2009 (doc. 1).  Respondent concedes the petition is timely (doc. 12 at 4–5).

II.     STANDARD OF REVIEW

Section 2254(a) of Title 28 provides that "a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court"

---

[3] On April 11, 2006, Petitioner pleaded nolo contendere to possession of marijuana with intent to sell or deliver, possession of cocaine, and possession of paraphernalia, and was sentenced to concurrent terms of 324 days in the county jail, with credit for 324 days (Ex. D at 206–10).  Petitioner is not challenging that judgment in the instant habeas petition (*see* doc. 1 at 1).

upon a showing that his custody is in violation of the Constitution or laws of the United States.  As the instant petition was filed after April 24, 1996, it is subject to the more deferential standard for habeas review of state court decisions under § 2254 as brought about by the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA).  Pub.L. 104-132, § 104, 110 Stat. 1214, 1218–19.  In relevant part, section 2254(d) now provides:

> (d)   An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> > (1)   resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2)   resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C.A. § 2254 (2002).

The United States Supreme Court explained the framework for § 2254 review in Williams v. Taylor, 529 U.S. 362, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000).[4]  The appropriate test was described by Justice O'Connor as follows:

> In sum, § 2254(d)(1) places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court.  Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied—the state court adjudication resulted in a decision that (1) "was contrary to . . . clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court of the United States."  Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing

---

[4] Unless otherwise noted, references to Williams are to the majority holding, written by Justice Stevens for the Court (joined by Justices O'Connor, Kennedy, Souter, Ginsburg, and Breyer) in parts I, III, and IV of the opinion (529 U.S. at 367–75, 390–99); and Justice O'Connor for the Court (joined by Justices Rehnquist, Kennedy, Thomas, and—except as to the footnote—Scalia) in part II (529 U.S. at 403–13).  The opinion of Justice Stevens in Part II was joined by Justices Souter, Ginsburg, and Breyer.

> legal principle from this Court's decisions but unreasonably applies that principle to
> the facts of the prisoner's case.

*Id.*, 529 U.S. at 412–13 (O'Connor, J., concurring); <u>Ramdass v. Angelone</u>, 530 U.S. 156, 120 S. Ct. 2113, 2119–20, 147 L. Ed. 2d 125 (2000).  In employing this test, the Supreme Court has instructed that on any issue raised in a federal habeas petition upon which there has been an adjudication on the merits in a formal State court proceeding, the federal court should first ascertain the "clearly established Federal law," namely, "the governing legal principle or principles set forth by the Supreme Court at the time the state court render[ed] its decision."  <u>Lockyer v. Andrade</u>, 538 U.S. 63, 71–72, 123 S. Ct. 1166, 155 L. Ed. 2d 144 (2003).  The law is "clearly established" if Supreme Court precedent at the time "would have compelled a particular result in the case."  <u>Neelley v. Nagle</u>, 138 F.3d 917, 923 (11th Cir. 1998), *overruled on other grounds by* <u>Parker v. Head</u>, 244 F.3d 813, 835 (11th Cir. 2001).

Next, the court must determine whether the State court adjudication is contrary to the clearly established Supreme Court case law, either because "'the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases' or because 'the state court confronts a set of facts that are materially indistinguishable from a decision of th[e] [Supreme] Court and nevertheless arrives at a result different from [Supreme Court] precedent.'"  <u>Lockyer</u>, 538 U.S. at 73 (quoting <u>Williams</u>, 529 U.S. at 405–06).  The Supreme Court has clarified that "[a]voiding these pitfalls does not require citation to our cases—indeed, it does not even require awareness of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them."  <u>Early v. Packer</u>, 537 U.S. 3, 8, 123 S. Ct. 362, 365, 154 L. Ed. 2d 263 (2002) (quoting <u>Williams</u>, 529 U.S. at 405–06).  If the State court decision is found in either respect to be contrary, the district court must independently consider the merits of the petitioner's claim.

If on the other hand, the State court applied the correct Supreme Court precedent and the facts of the Supreme Court cases and the petitioner's case are not materially indistinguishable, the court must go to the third step and determine whether the State court "unreasonably applied" the governing legal principles set forth in the Supreme Court's cases.  The standard for an unreasonable application inquiry is "whether the state court's application of clearly established federal law was objectively unreasonable."  <u>Williams</u>, 529 U.S. at 409.  Whether a State court's decision was an

unreasonable application of a legal principle must be assessed in light of the record the court had before it.  Holland v. Jackson, 542 U.S. 649, 652, 124 S. Ct. 2736, 2737–38, 159 L. Ed. 2d 683 (2004) (per curiam); *cf.* Bell v. Cone, 535 U.S. 685, 697 n.4, 122 S. Ct. 1843, 1851 n.4, 152 L. Ed. 2d 914 (2002) (declining to consider evidence not presented to state court in determining whether its decision was contrary to federal law).  An objectively unreasonable application of federal law occurs when the State court "identifies the correct legal rule from Supreme Court case law but unreasonably applies that rule to the facts of the petitioner's case" or "unreasonably extends, or unreasonably declines to extend, a legal principle from Supreme Court case law to a new context." Putman v. Head, 268 F.3d 1223, 1241 (11th Cir. 2001).  "In determining whether a state court's decision represents an unreasonable application of clearly established federal law, a federal court conducting habeas review 'may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable.'" Gill v. Mecusker, — F.3d —, 2011 WL 609844, at *13 (11th Cir. Feb. 23, 2011) (quoting Williams, 529 U.S. at 411) (citing Harrington v. Richter, — U.S. —, 131 S. Ct. 770, 786–87 (Jan. 19, 2011)).  The AEDPA's "unreasonable application" standard focuses on the state court's ultimate conclusion, not the reasoning that led to it.  *See* Gill, supra at *17 (citing Harrington, 131 S. Ct. at 786).   Under § 2254(d), a habeas court must determine what arguments or theories supported or could have supported the state court's decision, and then ask whether it is possible that fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of the Supreme Court.  *See* Harrington, 131 S. Ct. at 786; *see also* Gill, *supra*, at *18 (the federal district court may rely on grounds other than those articulated by the state court in determining that habeas relief was not warranted, so long as the district court did not err in concluding that the state court's rejection of the petitioner's claims was neither an unreasonable application of a Supreme Court holding nor an unreasonable determination of the facts).

Section 2254(d) also allows federal habeas relief for a claim adjudicated on the merits in State court where that adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(2).  The Supreme Court has clarified that: "a decision adjudicated on the merits

in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." Miller-El v. Cockrell, 537 U.S. 322, 340, 123 S. Ct. 1029, 1041, 154 L. Ed. 2d 931 (2003) (dictum).

When performing its review under § 2254(d), the federal court must bear in mind that any "determination of a factual issue made by a State court shall be presumed to be correct," and the petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence."  28 U.S.C. § 2254(e)(1); see e.g. Miller-El, 537 U.S. at 340 (explaining that a federal court can disagree with a state court's factual finding and, when guided by AEDPA, "conclude the decision was unreasonable or that the factual premise was incorrect by clear and convincing evidence"); Jones v. Walker, 469 F.3d 1216, 1226–27 (11th Cir. 2007) (holding that § 2254(d)(2)'s "unreasonable determination" standard "must be met by clear and convincing evidence," and concluding that that standard was satisfied where prisoner showed "clearly and convincingly" that the state court's decision "contain[ed] an 'unreasonable determination' of fact.").   The "unreasonable determination of the facts" standard is only implicated to the extent that the validity of the state court's ultimate conclusion is premised on unreasonable fact finding. See Gill, 2010 WL 609844, at * 18.  A petitioner is not entitled to relief unless he demonstrates by clear and convincing evidence that the record reflects an insufficient factual basis for affirming the state court's decision. Id.

Only if the federal habeas court finds that the petitioner satisfied AEDPA, and § 2254(d), does the court take the final step of conducting an independent review of the merits of the petitioner's claims.  See Panetti v. Quarterman, 531 U.S. 930, 953, 127 S. Ct. 2842, 2858, 168 L. Ed. 2d 662 (2007); Jones, 469 F.3d 1216 (same).  The writ will not issue unless the petitioner shows that he is in custody "in violation of the Constitution or laws and treaties of the United States."  28 U.S.C. § 2254(a).

Within this framework, the court will review Petitioner's claims.

III.    PETITIONER'S CLAIMS

   A.    Ground One:  "Denial of effective assistance of counsel—failure to seek dismissal of possession of firearm by convicted felon charge."

Petitioner contends defense counsel should have filed a motion to suppress the firearms seized during a search of his residence, or a motion to dismiss the firearm possession charge, on the ground that the search conducted by law enforcement agents, which resulted in discovery of four firearms, was conducted outside the scope of the search warrant (doc. 1 at 5–10).  Petitioner argues the search warrant particularly described the items to be seized as drug-related paraphernalia and contraband, not firearms (*id.*).  Therefore, counsel should have filed a motion to suppress evidence of the firearms or a motion to dismiss the charge (*id.*).

Respondent states it appears Petitioner exhausted his claim by presenting it in his Rule 3.850 motion and appealing the state circuit court's denial of the motion (doc. 12 at 5).  Respondent contends Petitioner failed to show the state court's adjudication of the claim was contrary to or an unreasonable application of clearly established federal law (*id.* at 5–6).

> 1.      Clearly Established Federal Law

The standard for evaluating claims of ineffective assistance of counsel is set forth in Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984).  To obtain relief under Strickland, Petitioner must show (1) deficient performance by counsel and (2) a reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been different.  466 U.S. at 687–88.  If Petitioner fails to make a showing as to either performance or prejudice, he is not entitled to relief.  *Id.* at 697.

"The petitioner's burden to prove, by a preponderance of the evidence, that counsel's performance was unreasonable is a heavy one."  Jones v. Campbell, 436 F.3d 1285, 1293 (11th Cir. 2006) (citing Chandler v. United States, 218 F.3d 1305, 1313 (11th Cir. 2000) (en banc)).  The focus of inquiry under the performance prong is "reasonableness under prevailing professional norms."  Strickland, 466 U.S. at 688–89.  "Judicial scrutiny of counsel's performance must be highly deferential," and courts should make every effort to "eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time."  *Id.* at 689.  If the record is not complete regarding counsel's actions, "then the courts should presume 'that what the particular defense lawyer did at trial—for example, what witnesses he presented or did not present—were acts that some lawyer might do."  Jones, 436 F.3d at 1293 (citing Chandler, 218 F.3d at 1314–15 n.15).  Furthermore, "[e]ven if many

reasonable lawyers would not have done as defense counsel did at trial, no relief can be granted on ineffectiveness grounds unless it is shown that no reasonable lawyer, in the circumstances, would have done so.  Rogers v. Zant, 13 F.3d 384, 386 (11th Cir. 1994).  Counsel's performance is deficient only if it is "outside the wide range of professional competence."  Jones, 436 F.3d at 1293 (citing Strickland, 466 U.S. at 690); Lancaster v. Newsome, 880 F.2d 362, 375 (11th Cir. 1989) (emphasizing that petitioner was "not entitled to error-free representation").  "[T]here are no 'absolute rules' dictating what reasonable performance is . . . ."  Michael v. Crosby, 430 F.3d 1310, 1320 (11th Cir. 2005) (quoting Chandler, 218 F.3d at 1317).  Indeed, "'[a]bsolute rules would interfere with counsel's independence—which is also constitutionally protected—and would restrict the wide latitude counsel have in making tactical decisions.'"  Id. (quoting Putman v. Head, 268 F.3d 1223, 1244 (11th Cir. 2001)).

As to the prejudice prong of the Strickland standard, Petitioner's burden of demonstrating prejudice is high.  See Wellington v. Moore, 314 F.3d 1256, 1260 (11th Cir. 2002).  The Supreme Court has cautioned that "'[i]t is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding.'"  Id. (quoting Strickland, 466 U.S. at 693).  However, the Court has also clarified that a petitioner need not demonstrate it "more likely than not, or prove by a preponderance of evidence," that counsel's errors affected the outcome.  Strickland, 466 U.S. at 693–94.  Instead,

> The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome.

Id. at 694.  Indeed, it would be "contrary to" the law clearly established in Strickland for a state court to reject an ineffectiveness claim for failing to prove prejudice by a preponderance of the evidence.  Williams v. Taylor, 529 U.S. at 405–06.

The prejudice assessment does "not depend on the idiosyncracies of the particular decisionmaker," as the court should presume that the judge or jury acted according to law.  Strickland, 466 U.S. at 694–95.  "When a defendant challenges a conviction, the question is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt."  Id. at 695.

> **2.      Federal Review of State Court Decision**

Petitioner raised this ineffective assistance of counsel claim as Ground One in his amended Rule 3.850 motion (Ex. J at 21–23).  In the written order denying Petitioner's post-conviction motion, the state circuit court correctly identified the <u>Strickland</u> standard as the controlling legal standard (*id.* at 131).  The state circuit court found as fact that during a pre-trial hearing on March 15, 2005, Petitioner testified that when law enforcement officers came to his residence on October 29, 2004, with a search warrant, he told them there were guns in the house (*id.* at 132).  The court also found that the testimony at that hearing established that: (1) Petitioner went out of his residence into the yard when the officers arrived at the house that morning; (2) an officer asked Petitioner about a shooting incident in the neighborhood, whether the home was his residence, and whether they would find any drugs there; and (3) Petitioner then told the officers there were guns in the house (*id.*).  The court found that when asked at the hearing why he told law enforcement there were guns in the house, Petitioner responded, "Once they went to searching I knew they was [sic] there but I wasn't around them, but once they started searching I didn't want them to start pulling out their guns and pointing at me, I'm letting them know what was in the house, you know." (*id.*).  The court found that Petitioner volunteered the information about the presence of guns in the home (*id.*).  The court also found that later that day (the day of the search), Petitioner told law enforcement he owned the .410 shotgun that was seized that morning during execution of the search warrant (*id.*).  The court found as fact that the weapons were located in plain view or where drugs were likely to be located (*id.*).  Additionally, the court found that defense counsel, Mr. Green, reviewed the search warrant and the application for the search warrant and determined that they were not defective beyond a scrivener's error (*id.*).  The court also determined the weapons were within the scope of the warrant; therefore, a motion to suppress or motion to dismiss would have had no merit (*id.*).  The court thus concluded counsel was not ineffective (*id.*).

Petitioner appealed the state circuit court's decision to the First DCA.  The appellate court affirmed per curiam without written opinion.  As previously discussed, when faced with a state appellate court's summary affirmance of a trial court's decision, the "unreasonable application" standard focuses on the state court's ultimate conclusion, not the reasoning that led to it.  *See* <u>Gill</u>, 633 F.3d at 1287 (citing <u>Harrington</u>, 131 S. Ct. at 786).  The federal court must determine what

arguments or theories supported or could have supported the state court's decision, and then ask whether it is possible that fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of the Supreme Court. *See* Harrington, 131 S. Ct. at 786; *see also* Gill, 633 F.3d at 1292 (holding that the federal district court may rely on grounds other than those articulated by the state court in determining that habeas relief was not warranted, so long as the district court did not err in concluding that the state court's rejection of the petitioner's claims was neither an unreasonable application of a Supreme Court holding nor an unreasonable determination of the facts).

The Fourth Amendment to the United States Constitution requires that a search warrant "particularly describ[e] the place to be searched, and the persons or things to be seized" in order to protect individuals from "general, exploratory searches." United States v. Khanani, 502 F.3d 1281, 1289 (11th Cir. 2007) (internal quotations marks omitted).  Any seizure resulting from a search that exceeds the scope of a warrant is thus unconstitutional.  *See* United States v. Jackson, 120 F.3d 1226, 1228 (11th Cir. 1997) (per curiam).   Officers executing a warrant may search as extensively as reasonably necessary to locate the items described in the warrant.  *See id.* at 1228–29.  The scope of the search generally includes any area where the item in question may be found, even if the search requires "separate acts of entry or opening."  United States v. Martinez, 949 F.2d 1117, 1120 (11th Cir. 1992).  In Jackson, for example, the Eleventh Circuit concluded that officers did not exceed the scope of a search warrant for cocaine when they opened a closet door and found a firearm instead of drugs.  *See* Jackson, 120 F.3d at 1229.

Additionally, the plain-view doctrine permits a warrantless seizure where the officer is lawfully located in the place from which the seized object could be plainly viewed and has a lawful right of access to the object itself.  *See* United States v. Smith, 459 F.3d 1276, 1290 (11th Cir. 2006).  The officer may seize any item that he has probable cause to believe is contraband, and any item whose incriminating nature is immediately apparent.  *Id.*  Seizure of items not covered by a warrant does not invalidate an otherwise valid search if the search and seizure were reasonable under all the circumstances.  *See* United States v. Schandl, 947 F.2d 462, 465 (11th Cir. 1991).

The state court's findings as to the testimony adduced at the pre-trial suppression hearing and Petitioner's statements to law enforcement regarding his ownership of one of the guns  are supported

by the transcripts of the suppression hearing and Petitioner's trial (*see* Ex. J at 139–46, Ex. K at 256–58).  Additionally, the search warrant, which is included in the record, described the premises to be searched as 4958 Blue Springs Road, mobile home #4B, where Petitioner, his wife, his mother, and his four children resided (Ex. J at 33–35, 57).  The warrant described the items to be seized as "crack cocaine, cocaine, cocaine base, cocaine paraphernalia, implements used to manufacture and distribute cocaine and/or instrumentalities, records, ledgers, documentation, and other evidence to prove a felony has been or is being committed, . . . to-wit the sale and possession of controlled substances . . . " (*id.*).  Trial testimony established that during execution of the search warrant, officers found a .45 caliber Derringer in a dresser drawer, a .32 caliber Baretta pistol under pillows on the bed in the master bedroom, a 9 millimeter handgun in a drawer, and a .410 shotgun on the floor of a closet (Ex. J at 192–93, 195, 197, Ex. K at 201–03, 210–11, 214–16, 218–19).

Here, Petitioner does not dispute that the officers were authorized by the search warrant to look for drugs, drug paraphernalia, implements used to manufacture and distribute drugs, and documents.  Additionally, the search warrant gave the officers lawful access to the entire mobile home.  *See* Smith, 459 F.3d at 1276.  The guns were in plain view, as the officers searched drawers, closets, and other places where items described in the search warrant might have been located.  *See id.*  Further, the incriminating nature of the guns would have been immediately apparent.  *See id;* s*ee also, e.g.*, United States v. Smith, 918 F.2d 1501, 1509 (11th Cir. 1990) (firearms properly seized, though not named in the warrant, as they are "'tools of the trade'") (citations omitted).  Accordingly, the guns were properly seized, even though they were not particularly described in the search warrant.

Petitioner failed to show that defense counsel had a meritorious basis for arguing that the guns should be suppressed or the charge dismissed on the ground that seizure of the guns exceeded the scope of the search warrant.  Furthermore, he failed to show a reasonable probability that a motion to suppress or a motion to dismiss would have been properly granted by the trial court.  Therefore, Petitioner has failed to demonstrate that the state court's denial of his ineffective assistance of counsel claim was contrary to or an unreasonable application of Strickland.

B.    Ground Two:  "Denial of effective assistance of counsel—failure to investigate veracoty [sic] of probable cause affidavit to support issuance of search warrant."

Ground Three:  "Denial of effective assistance of counsel—failure to call witnesses for suppression hearing."[5]

Petitioner contends defense counsel failed to conduct a reasonable investigation into the truth of Officer Virgil Watson's allegations in his affidavit submitted in support of the application for search warrant (doc. 1 at 11, 13–17, 18–25).   In the affidavit, Officer Watson described two controlled drug transactions conducted by law enforcement and a confidential informant at Petitioner's residence (*see* Ex. J at 29–32).  Petitioner states he repeatedly asked defense counsel to ascertain the dates of the alleged controlled buys described in the affidavit, and the identity of the confidential informant who participated in the buys (doc. 1 at 11, 13–17, 18–25).  He asserts he also asked counsel to review the audio and video recordings of the buys (*id.*).  He further asserts counsel did not depose pertinent witnesses, namely, Officer Watson, Sergeant Edwards, Sergeant Edmondson, Investigator Arnold, Officer Roper, and the confidential informant, to ascertain the dates of the buys (*id.*).  Petitioner argues if defense counsel had investigated the allegations in Officer Watson's affidavit, he would have learned that the dates and times of the actual controlled buys conflicted with the time frame alleged in the search warrant (*id.*).  He contends if counsel had presented testimony from the pertinent witnesses at the suppression hearing, the search warrant would have been declared invalid and the charge dismissed (*id.*).  Additionally, Petitioner repeats his arguments with regard to counsel's failure to challenge seizure of the guns on the ground that they exceeded the scope of the warrant (*id.* at 15–16).

Respondent asserts a confusing exhaustion argument as to Ground Two.  Respondent construes Petitioner's claim as merely re-asserting the claim in Ground One, that is, counsel was ineffective for failing to seek suppression of the firearms on the ground that they were outside the scope of the search warrant (doc. 12 at 6–7).  Respondent goes on to argue Petitioner did not fairly present this claim to the state court, because in the state court, Petitioner argued as Ground Two that defense counsel should have investigated the dates and times of the alleged controlled drug buys involving Petitioner (*id.*).  As to Ground Three, Respondent concedes the claim was exhausted (*id.* at 8).  Respondent contends notwithstanding the exhaustion argument as to Ground Two, Petitioner

---

[5] The court has consolidated its analysis of Grounds Two and Three for organizational purposes.

failed to show the state court's adjudication of the claims was contrary to or an unreasonable application of clearly established federal law (*id.* at 7–9).

The record of the post-conviction proceedings demonstrates that Petitioner fairly presented Grounds Two and Three in his amended Rule 3.850 motion (Ex. J at 23–26).  Therefore, the undersigned concludes the claims were properly exhausted.

                1.          Clearly Established Federal Law

The clearly established federal standard for evaluating claims of ineffective assistance of counsel is the <u>Strickland</u> standard set forth *supra*.

                2.          Federal Review of State Court Decision

As discussed *supra*, Petitioner raised both of these ineffective assistance of counsel claims as Grounds Two and Three in his Rule 3.850 motion (Ex. J at 23–26).  In the motion, Petitioner alleged he told defense counsel he did not sell drugs to anyone (*id.* at 24).  He argued that if counsel had discovered the dates and times of the controlled buys, he (Petitioner) could have shown he did not sell any drugs to anyone on those dates, nor was he at the residence at the time of the alleged drug transactions (*id.*).

At the post-conviction evidentiary hearing, Petitioner's trial counsel, Guy Green, testified he had been a defense attorney for more that thirty-five years (Ex. J at 100).  Attorney Green testified that according to Florida law, by charging Petitioner with drug possession instead of drug sales, the State was not required to disclose information which would reveal the identity of the confidential informant/purchaser, including the specific date and time of the purchases (*id.* at 106–07).  Green testified he therefore would not have been able to compel the State to identify the confidential information or disclose the specific dates and times of the controlled buys (*id.*).  Attorney Green testified he could not specifically remember discussing this issue with Petitioner, but he stated that if the issue had come up during their meetings, he would have told Petitioner he could not obtain information that would identify the confidential informant (*id.* at 107–08).  Green testified he did not perceive any defects in the search warrant, because the affidavit described two drugs sales from Petitioner's residence, and the allegations would have been supported by testimony from the officers involved (*id.* at 112–13).  He testified further that the officers followed the correct procedure in obtaining and executing the warrant, with the exception of the issue he raised in a

motion to quash the search warrant, namely, that the information in the affidavit was stale (*id.* at 108–09, 112–13).  Attorney Green testified he did not perceive a basis for challenging the veracity of the allegations in the search warrant (*id.* at 113, 117).

Petitioner testified that during one of his meetings with Attorney Green, Petitioner asked why he and his wife were not charged with drug sales (Ex. J at 69, 83–84).  Petitioner denied that Attorney Green ever told him they were likely not charged with sales because the State did not want to disclose information that would reveal the identity of the confidential information (including dates and times of the drug buys) (*id.* at 69, 84).

The state circuit court found as fact that Petitioner failed to identify any information that discovery could have provided, except the identity of the confidential informant and the dates and times of the drug transactions (Ex. J at 134).  The court determined that under Florida law, the State could not be compelled to disclose that information, because the State elected to charge Petitioner with possession of drugs, not sale of drugs (*id.*) (citing State v. Devoid, 706 So. 2d 924 (Fla. 2d DCA 1998) and State v. Mashke, 577 So. 2d 610 (Fla. 2d DCA 1991)).  The court therefore concluded Petitioner failed to establish that Attorney Green's performance was deficient, or that the outcome of the case would have been different (*id.*).

The state court's factual finding regarding Petitioner's failure to identify any information that discovery could have provided, except the identity of the confidential informant and the specific dates and times of the drug transactions, is supported by the record.  Additionally, Petitioner failed to establish that Attorney Green had a legal basis for pursuing discovery of the identity of the confidential informant or the specific dates and times of the controlled buys.  The Supreme Court has held that neither the Due Process Clause of the Fourteenth Amendment nor the Sixth Amendment right of confrontation requires the State to disclose a confidential informant's identity at a preliminary hearing to determine probable cause for a search.  McCray v. Illinois, 386 U.S. 300, 312, 87 S. Ct. 1056, 18 L. Ed. 2d 62 (1967).  Further, Florida evidentiary rules in criminal cases permit the State to withhold the identity of persons who provide law enforcement officers with information about criminal activity, "unless the confidential informant is to be produced at a hearing or trial or a failure to disclose the informant's identity will infringe the constitutional rights of the defendant."  Fla. R. Crim. P. 3.220(g)(2).  Because the State has the privilege of nondisclosure, the

burden is on the defendant claiming an exception to the rule to show why he is entitled to disclosure. *See* Treverrow v. State, 194 So. 2d 250, 252 (Fla. 1967).  The first component necessarily centers around a specific defense asserted by the defendant in the case, as to which the informant's testimony is material and helpful.  *See* State v. Zamora, 534 So. 2d 864, 868 (Fla. 3d DCA 1988). The second component concentrates on general due process considerations and is not confined to a defense raised by the defendant.  *See* Miller v. State, 729 So. 2d 417, 419 (Fla. 4th DCA 1999). A confidential informant's identity must be disclosed under the second, due process prong under circumstances such as the following:  (1) the defendant is charged with delivering or selling drugs to the informant; (2) the informant is called as a witness at trial; (3) the informant's affidavit supports the issuance of a search warrant; or (4) the informant is a defense witness at trial and the defendant seeks to cross-examine an officer about the relationship between the officer and the informant.  *See* State v. Rivas, 25 So. 3d 647, 651 (Fla. 4th DCA 2010) (emphasis added) (citations omitted).  A confidential informant's identity need not be disclosed when the informant's sole role is to provide probable cause in support of a warrant which leads to the seizure of evidence which serves as the basis for the offense charged.  *See* United States v. Mendoza, 433 F.2d 891, 893–94 (5th Cir. 1970) (where search warrant that led to defendant's arrest was secured on the basis of confidential informant's information, and there was no evidence the informant "participated in any way in the offense charged," disclosure of informant's identity was not required);[6] Devoid, 706 So. 2d at 925 (citations omitted).

In the instant case, none of the circumstances described in Rivas existed.  Petitioner was not charged with either of the controlled buys described in Officer Watson's affidavit for the search warrant—he was charged with possession of a firearm by a convicted felon and possession of drugs and drug paraphernalia, not delivering or selling drugs to the informant.  The affidavit supporting the search warrant was signed by Officer Watson, not the informant.  The evidence to support the charges was derived from the officers' search of Petitioner's residence, which the informant neither witnessed nor participated in.  There is no indication the State ever intended to call the informant

---

[6] In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) ( en banc ), the Eleventh Circuit adopted as binding precedent all Fifth Circuit decisions rendered prior to October 1, 1981.

as a witness at the suppression hearing or trial, or to introduce evidence of either of the controlled buys at trial.

Additionally, Petitioner failed to show that the informant's identity or the dates and times of the controlled buys was relevant and helpful to his defense at trial.  The theory of the defense was that none of the firearms were in Petitioner's care, custody, or control (*see* Ex. B).  Petitioner failed to show that the informant could have amplified or contradicted the trial testimony of the officers regarding their discovery of firearms in Petitioner's residence, or the officers' testimony regarding Petitioner's admission that he owned one of the firearms.  Further, Petitioner cited no legal authority to support the argument that information that may be useful in challenging a search warrant constitutes information relevant to a "specific defense" to a charge; nor did he cite any legal authority undermining the general principle that disclosure may not be compelled in cases where the only role played by the informant was the development of probable cause which resulted in a subsequent, fruitful search.

Moreover, Attorney Green was aware (by virtue of Officer Watson's affidavit) that one of the controlled buys, conducted pursuant to standard procedure as described in the affidavit, occurred on an evening between October 2 and October 22, 2004, and the other occurred on an afternoon between October 12 and October 22, 2004 (Ex. J at 29–32).  Even if counsel had discovered the specific dates and times of the two controlled buys, Petitioner failed to demonstrate a reasonable probability the outcome of the proceedings would have been different.  At the post-conviction evidentiary hearing, Petitioner testified he worked from 7:30 a.m. to 6:00 p.m. Monday through Friday (*see* Ex. J at 67).  However, the affidavit for the search warrant alleged that the controlled buy involving Petitioner occurred during the evening hours between October 2 and October 22.  Further, the other controlled buy did not involve Petitioner, it involved his wife, and Petitioner offered no evidence to the state court showing the allegation concerning his wife's sale of drugs from the residence would have been proven false.  Therefore, Petitioner failed to show a reasonable probability that the result of the proceedings would have been different had counsel (1) sought to discover the identity of the confidential informant or the specific dates and times of the controlled buys described in the search warrant affidavit, or (2) presented testimony at the suppression hearing

from the officers who participated in the controlled buys.  Therefore, the state court's adjudication of the claims asserted in Grounds Two and Three was not an unreasonable application of <u>Strickland</u>.

      C.    <u>Ground Four:  "Denial of effective assistance of counsel—failure to file motion for expiration of speedy trial and motion to dismiss."</u>

Petitioner argues defense counsel should have filed a notice of expiration of speedy trial period and a motion to dismiss the charge upon expiration of the speedy trial period, pursuant to Rule 3.191 of the Florida Rules of Criminal Procedure and the Sixth Amendment (doc. 1 at 26–30). Petitioner states he was arrested on October 24, 2004, but not tried until May 26, 2005 (*id.* at 27–28).  He states no pre-trial motions were filed by defense counsel that tolled the 175-day speedy trial period, nor did the defense seek any continuances (*id.*).  He further asserts he did not waive his speedy trial rights (*id.*).  Petitioner states he was ready for trial upon expiration of the 175-day speedy trial period, and defense counsel knew that the 175-day period had elapsed (*id.*).  Petitioner states counsel's decision not to seek dismissal of the charge based upon expiration of the speedy trial period was unreasonable, and "prejudice is subsumed [sic]" (*id.* at 29).

Respondent concedes Petitioner exhausted his claim by presenting it in his Rule 3.850 motion and appealing the state circuit court's summary denial (doc. 12 at 10).  Respondent contends Petitioner failed to show the state court's adjudication of the claim was contrary to or an unreasonable application of clearly established federal law (*id.* at 10–14).

      1.    Clearly Established Federal Law

As discussed *supra*, the <u>Strickland</u> standard is the clearly established standard for evaluating claims of ineffective assistance of counsel.

      2.    Federal Review of State Court Decision

Petitioner raised this ineffective assistance of counsel claim as Ground Four in his amended Rule 3.850 motion (Ex. J at 26).  The state circuit court found as fact that Petitioner was out of custody on bond after his arraignment (*id.* at 134).  The court found that Attorney Green made a tactical decision not to press for a speedy trial, as evidenced by Green's testimony that in his experience, the passage of time tended to work to the benefit of non-incarcerated clients, because evidence may be lost, and witnesses may become ineffective or unavailable (*id.*).  Additionally, the state court determined that as a matter of Florida law, if defense counsel had raised a speedy trial

issue, the State could have tried Petitioner within the recapture period provided in the Florida Rules of Criminal Procedure (*id.* (citing State v. Hall, 903 So. 2d 1001 (Fla. 2d DCA 2005))).  The court also determined Petitioner failed to demonstrate that the result of his trial would have been different if he had been tried earlier, because the evidence against him did not change (*id.*).

The transcript of the post-conviction evidentiary hearing confirms the state court's findings with respect to Attorney Green's stated reasons for not pursuing the speedy trial issue.  Attorney Green testified that if a defendant is out of jail on bond, he is better off with a non-speedy trial, because evidence may be lost or destroyed, and witnesses may become unavailable (Ex. J at 111). He testified that even if he had filed a notice of expiration of the speedy trial period, the case would have been tried within the fifteen-day recapture period provided by Florida's speedy trial rule; therefore, filing a notice of expiration would have been meaningless (*id.* at 111, 113–14).

Florida's speedy trial rule provides, in relevant part:

**(a) Speedy Trial without Demand.**  Except as otherwise provided by this rule, . . . every person charged with a crime shall be brought to trial . . . within 175 days of arrest if the crime charged is a felony.  If trial is not commenced within these time periods, the defendant shall be entitled to the appropriate remedy as set forth in subdivision (p).  The time periods established by this subdivision shall commence when the person is taken into custody as defined under subdivision (d).
. . . .
**(c) Commencement of Trial.**  A person shall be considered to have been brought to trial if the trial commences within the time herein provided. The trial is considered to have commenced when the trial jury panel for that specific trial is sworn for voir dire examination or, on waiver of a jury trial, when the trial proceedings begin before the judge.

**(d) Custody.**  For purposes of this rule, a person is taken into custody
(1) when the person is arrested as a result of the conduct or criminal episode that gave rise to the crime charged, . . .
. . . .
**(p) Remedy for Failure to Try Defendant within the Specified Time.**
. . . .
(2) At any time after the expiration of the prescribed time period, the defendant may file a separate pleading entitled "Notice of Expiration of Speedy Trial Time," and serve a copy on the prosecuting authority.

(3) No later than 5 days from the date of the filing of a notice of expiration of speedy trial time, the court shall hold a hearing on the notice and, unless the court finds that

one of the reasons set forth in subdivision (j) exists, shall order that the defendant be brought to trial within 10 days. A defendant not brought to trial within the 10-day period through no fault of the defendant, on motion of the defendant or the court, shall be forever discharged from the crime.

Fla. R. Crim. P. 3.191.

The record shows that Petitioner was arrested on October 29, 2004 (Ex. A at 2–5, 12–14). The 175-day speedy trial period thus expired on Friday, April 22, 2005. If defense counsel filed a notice of expiration on April 23, 2005, the trial court would have been required to hold a hearing by Friday, April 29. *See* Vining v. State, 637 So. 2d 921 (Fla. 1994) (intermediate Saturday and Sunday are excludable from five-day period within which hearing must be held on motion for discharge on speedy trial grounds). The State would then have been required to bring Petitioner to trial on May 9, 2005. Petitioner's trial actually commenced seventeen days later, on May 26, 2005 (Ex. C).

Petitioner failed to show a reasonable probability he would have been discharged from the crime if counsel had file a notice of expiration. At trial, the State presented testimony from four officers involved in the search of Petitioner's residence and a crime laboratory analyst (Ex. B). The State also presented Petitioner's confession to law enforcement that he owned one of the guns found in his residence (*id.* at 104–06). Guns and ammunition seized by the officers during the search of Petitioner's residence were also admitted (*id.* at 36–102). Petitioner produced no evidence suggesting the State would not have been able to present this same evidence seventeen days earlier, within the recapture period. Therefore, he failed to show he was prejudiced by defense counsel's failure to pursue the speedy trial issue under Florida's speedy trial rule.

Petitioner likewise failed to establish ineffective assistance with regard to counsel's failure to assert his federal constitutional right to a speedy trial. In determining whether a particular defendant has been deprived of his Sixth Amendment right to a speedy trial, the court should assess four factors: (1) the length of the delay, (2) the reason for the delay, (3) the defendant's assertion of his right, and (4) prejudice to the defendant. Barker v. Wingo, 407 U.S. 514, 530, 92 S. Ct. 2182, 33 L. Ed. 2d 101 (1972). The Supreme Court held that the length of the delay is to some extent the triggering mechanism. *Id.* "Until there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors that go into the balance." *Id.*

As to the first factor, the delay in the instant case was only seven months, which is not overly long to render it presumptively prejudicial.  Second, there is no indication the State deliberately attempted to delay the trial in order to gain a tactical advantage over the defense or to harass Petitioner.  The docket shows the parties were engaged in discovery and litigating pre-trial matters during that time, including the defense's motion to suppress Petitioner's statements to law enforcement and motion to quash the search warrant (*see* Ex. A).  As to the third factor, Petitioner does not allege, nor does the record suggest, he asserted his right to a speedy trial.  Petitioner testified at the post-conviction evidentiary hearing that he asked Attorney Green why he did not pursue his speedy trial rights, but he admitted he did so <u>after</u> trial (Ex. J at 78, 86).  Finally, the fourth factor, that is, prejudice to Petitioner, weighs against a constitutional violation.  The Supreme Court identified the following interests of defendants which the speedy trial right was designed to protect:  (i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired.  *See* <u>Barker</u>, 407 U.S. at 532.  In the instant case, Petitioner was not incarcerated prior to trial, and there is no indication the defense was impaired by the seven-month delay from the date Petitioner was arrested to the date of his trial.  Weighing the <u>Barker</u> factors, the undersigned concludes Petitioner failed to show deficient performance or prejudice with regard to defense counsel's failure to assert Petitioner's constitutional speedy trial right.

Petitioner failed to demonstrate that the state court's adjudication his ineffective assistance of counsel claim was an unreasonable application of <u>Strickland</u>.  Therefore, he is not entitled to federal habeas relief on Ground Four.

## IV.   CERTIFICATE OF APPEALABILITY

As amended effective December 1, 2009, § 2254 Rule 11(a) provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)."  A timely notice of appeal must still be filed, even if the court issues a certificate of appealability.  Rule 11(b), Rules Governing Section 2254 Cases.

The undersigned finds no substantial showing of the denial of a constitutional right.  28 U.S.C. § 2253(c)(2); <u>Slack v. McDaniel</u>, 529 U.S. 473, 483–84, 120 S. Ct. 1595, 1603–04, 146 L.

Ed. 2d 542 (2000) (explaining how to satisfy this showing) (citation omitted).  Therefore, the undersigned recommends that the district court deny a certificate of appealability in its final order.

The second sentence of new Rule 11(a) provides:  "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue."  Thus, if there is an objection to this recommendation by either party, that party may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation.

Accordingly, it is **ORDERED**:

The clerk of court is directed to change the docket to reflect that Kenneth S. Tucker is substituted for Walter A. McNeil as Respondent.

And it is respectfully **RECOMMENDED**:

1.       That the petition for writ of habeas corpus (doc. 1) be **DENIED**.

2.       That a certificate of appealability be **DENIED**.

At Pensacola, Florida, this 18th day of October 2011.


/s/ Elizabeth M. Timothy
**ELIZABETH M.  TIMOTHY**
**UNITED STATES MAGISTRATE JUDGE**


## NOTICE TO THE PARTIES

**Objections to these proposed findings and recommendations may be filed within fourteen (14) days after being served a copy thereof.  Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.  A copy of objections shall be served upon the magistrate judge and all other parties.  Failure to object may limit the scope of appellate review of factual findings.  *See* 28 U.S.C. § 636; United States v. Roberts, 858 F.2d 698, 701 (11th Cir. 1988).**